## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Criminal Action No. 2004-0105** |
| **v.** | ) | |
| | ) | |
| **FELIX CRUZ, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Felix Cruz**
    *Defendant Pro Se*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on Magistrate Judge George W. Cannon Jr.'s Report and Recommendation ("R&R") (Dkt. No. 881) regarding Defendant Felix Cruz's ("Cruz") Motion to Vacate (Dkt. Nos. 753, 756, 756-1, 756-2); the Government's Response to Cruz's Motion to Vacate (Dkt. No. 806); Cruz's Reply (Dkt. No. 857); Cruz's Objections to Magistrate Judge Cannon's R&R (Dkt. No. 885); Cruz's First through Eighth Motions to Supplement his Motion to Vacate (Dkt. Nos. 779, 870, 916, 919, 938, 952, 957, 989); the Government's Supplemental Response to Cruz's Second Motion to Supplement (Dkt. No. 902); and the Government's Supplemental Response to Cruz's Third through Seventh Motions to Supplement (Dkt. No. 982). Cruz asserts eighteen grounds for relief in his Motion to Vacate (Dkt. No. 753), and eight additional grounds in his First through Eighth Motions to Supplement (Dkt. Nos. 779, 870, 916, 919, 938, 952, 957, 989). The Court previously granted Cruz's eight Motions to

Supplement (Dkt. Nos. 839, 887, 966, 990), and the Court here addresses the grounds for relief raised in both Cruz's initial Motion to Vacate and his Motions to Supplement.

For the reasons that follow, the Court finds that two of Cruz's convictions—Counts 6 and 9—must be vacated and set for resentencing. Because the Court finds that Cruz's Motion to Vacate is otherwise without merit, the Court will deny the remainder of Cruz's Motion. The Court will also adopt Magistrate Judge Cannon's R&R as modified herein.

## I.      BACKGROUND

Following a four-week trial in early 2007, a jury found Felix Cruz guilty of eleven counts stemming from a string of crimes he committed together with his three co-defendants in early 2004, including carjacking, attempted robbery, and murder.[1] The trial court subsequently entered judgments of acquittal on two of these counts and sentenced Cruz, *inter alia*, to life imprisonment.[2] Cruz and his co-defendants timely appealed on a variety of grounds, and the Third Circuit affirmed Cruz's convictions and sentence. *United States v. Berrios*, 676 F. 3d 118, 144 (3d Cir. 2012).

After his direct appeal was denied, Cruz timely filed a Motion to Vacate under 28 U.S.C. § 2255 ("Section 2255"), in which he asserts eighteen grounds for post-conviction relief. (Dkt. Nos. 753, 756, 756-1, and 756-2). The Court referred Cruz's Motion to Vacate to Magistrate Judge Cannon (Dkt. No. 878), who recommended that the Court deny the Motion, concluding that the eighteen grounds specified therein are without merit (Dkt. No. 881). Cruz objected to Magistrate Judge Cannon's R&R (Dkt. No. 885), and also filed eight Motions to Supplement his Motion to

---

[1] *See* Dkt. No. 309 (Third Superseding Indictment); Dkt. No. 486 (Verdict Form).

[2] *See* Dkt. Nos. 578, 579 (Judgment and Commitment Orders on Territorial and Federal Counts); Dkt. No. 658 (acquitting Cruz on Count 3, carjacking in violation of 18 U.S.C. § 2119, and Count 4, use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)); Dkt. No. 686 (Amended Judgment and Commitment Order).

Vacate in which he asserts a total of eight additional grounds for post-conviction relief.[3] The Court granted each of Cruz's seven Motions to Supplement.[4]

Although Magistrate Judge Cannon's R&R addressed only the eighteen grounds for relief initially specified in Cruz's Motion to Vacate, the Court here addresses both those eighteen grounds for relief and the eight additional grounds specified in Cruz's Motions to Supplement. Based on the Court's review of the entire record, the Court concludes that two of Cruz's convictions—Counts 6 and 9—must be vacated and set for resentencing.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.  Standard of Review

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) (similar). When reviewing a report and recommendation, a district judge must review *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) (similar). Where the parties do not timely object to a magistrate judge's R&R, there is no statutory requirement that a district court review the R&R before accepting it. *See Thomas v.*

---

[3] *See* Dkt. No. 779 (First Motion to Supplement); Dkt. No. 870 (Second Motion to Supplement); Dkt. No. 916 (Third Motion to Supplement); Dkt. No. 919 (Fourth Motion to Supplement); Dkt. No. 938 (Fifth Motion to Supplement); Dkt. No. 952 (Sixth Motion to Supplement); Dkt. No. 957 (Seventh Motion to Supplement); Dkt. No. 989 (Eighth Motion to Supplement).

[4] *See* Dkt. No. 839 (Order granting First Motion to Supplement); Dkt. No. 887 (Order granting Second Motion to Supplement); Dkt. No. 966 (Order granting Third, Fourth, Fifth, Sixth, and Seventh Motions to Supplement); Dkt. No. 990 (Order Granting Eighth Motion to Supplement). The Court ordered the Government to respond to six of the seven additional grounds for relief Cruz asserts in his Motions to Supplement (Dkt. Nos. 887, 966), and the Government did so (Dkt. Nos. 902, 982).

*Arn*, 474 U.S. 140, 151 (1985); 28 U.S.C. § 636(b)(1)(C) (a district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made"); *see also Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011) (recognizing that *Thomas* permits the district court to decline to review undisputed recommendations).

Notwithstanding *Thomas*, the Third Circuit has stressed that, even in the absence of an objection, the "better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report." *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987). When no objection to a magistrate judge's report and recommendation is made, the district court reviews the report and recommendation for plain error. *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987); *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006), *aff'd*, 276 Fed. App'x 125 (3d Cir. 2008) (explaining that by failing to object to a report and recommendation, the litigant "waived its right to have this Court conduct a *de novo* review," and that in those circumstances, "the scope of [the court's] review is far more limited and is conducted under the far more deferential standard of 'plain error.'"). Under this standard, a district court reviews a magistrate judge's report and recommendation for error that is "clear" or "obvious." *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007).

### B.  Motion to Vacate

Motions to vacate under Section 2255 are "the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 "afford[s] federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974).  To prevail on a Section 2255 motion, a petitioner must show that: (1)

the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If the petitioner meets the necessary criteria, the court must vacate the judgment against petitioner, discharge or resentence the petitioner, or grant the petitioner a new trial, as appropriate. 28 U.S.C. § 2255(b). However, not every error of law may be raised in a Section 2255 motion. *Davis*, 417 U.S. at 346. Rather, the remedies afforded by Section 2255 are intended only where the "claimed error of law [constitutes] a 'fundamental defect which inherently results in a complete miscarriage of justice'" and "'presents exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.'" *Id.* (quoting *Hill v. United States*, 368 U.S. 428, 428 (1962)).

## III.    DISCUSSION

Cruz objects, in substance, to the entirety of Magistrate Judge Cannon's R&R. (Dkt. No. 885). The Court will therefore review Magistrate Judge Cannon's R&R *de novo*. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). Below, the Court begins by summarizing the eighteen grounds upon which Cruz seeks relief in his initial Motion to Vacate and the eight grounds upon which he seeks relief in his eight Motions to Supplement. (*See infra*, Section III.A).The Court then concludes that each of the twenty grounds specified in Cruz's Motion to Vacate and Second Motion to Supplement are without merit (*see infra*, Section III.B), but that the arguments raised in his other Motions to Supplement warrant vacatur of Counts 6 and 9 in light of intervening changes in the law (*see infra*, Section III.C).[5] Accordingly, the Court will vacate Counts 6 and 9, and will,

---

[5] Cruz was charged in Count 6 with causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1). (Dkt. No. 686 at 1). He was charged in Count 9 with using a

by separate Order, schedule a resentencing hearing on the seven remaining counts. (*See infra*, Section III.D). The Court will otherwise deny Cruz's Motion to Vacate.

### A.  The Grounds Upon Which Cruz Seeks Relief

Cruz's Motion to Vacate initially specified eighteen grounds upon which he seeks post-conviction relief, all of which appear intended to attack his nine convictions. (Dkt. No. 753 at 4-31). Because Cruz comes before the Court *pro se*, the Court construes these grounds liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Liberally construed, the eighteen grounds Cruz initially asserted in his Motion to Vacate are:

#### <u>Grounds Relating to Ineffective Assistance of Counsel</u>

**(1)**   Cruz argues that both his trial counsel and appellate counsel were ineffective, thereby violating his Sixth Amendment right to effective counsel.[6]

#### <u>Grounds Relating to Impaneling of Jurors</u>

**(2)**   Cruz argues that the trial court improperly impaneled a juror, Juror No. 6, who stated during *voir dire* that she could not be fair and impartial, thereby violating his due process rights and his Sixth Amendment right to an impartial jury. Relatedly, Cruz argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[7]

---

firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 2. Because Cruz's Motion to Vacate and the existing record make clear that Cruz is not entitled to any relief other than that which the Court grants here, the Court will rule on Cruz's Motion to Vacate without holding an evidentiary hearing. *See United States v. Delbridge*, 504 F. App'x 145, 148 (3d Cir. 2012) ("A court may dismiss a motion to vacate without . . . holding an evidentiary hearing when it is clear from both the motion and the record that the movant is not entitled to relief.").

[6] Cruz describes these grounds as follows: "Whether the conviction and sentences are unconstitutional due to ineffective assistance of counsel . . . as guaranteed by the Sixth Amendment of the United States Constitution." (Dkt. No. 753 at 4).

[7] Cruz describes these grounds as follows: "Whether movant was denied a fair trial when a biased juror was impanelled after being excused by the trial court for being biased" because "[d]uring Jury Selection juror [#6] was asked 'how many of you cannot be fair and impartial . . . hold your cards up,' and juror #6, held her card up . . . [and] juror #6 was still impaneled on the jury sworn to give a verdict." (Dkt. No. 753 at 5). Cruz further notes that "Trial Counsel failed to move for

**(3)** Cruz argues that the trial court improperly impaneled a juror who had a "working relationship" with the murder victim's brother insofar as the trial court impaneled the juror without questioning the juror about his implied bias, thereby violating Cruz's due process rights and his Sixth Amendment right to an impartial jury. Relatedly, Cruz argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[8]

### Grounds Relating to Expert Testimony of Amy Michaud

**(4)** Cruz argues that the trial court improperly admitted the expert testimony and expert report of a Government witness, Amy Michaud, thereby violating his Sixth Amendment right of confrontation. Relatedly, Cruz argues that his appellate counsel was ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[9]

**(5)** Cruz argues that the trial court improperly admitted specific portions of Michaud's expert testimony and expert report, thereby violating his Sixth Amendment right of confrontation. Relatedly, Cruz argues that his appellate counsel was ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[10]

---

Cause and strike [a] biased juror" and "Appellat[e] Counsel refused to raise the issue, because Trial Counsel did not object." *Id.* at 5-6.

[8] Cruz describes these grounds as follows: "Whether the trial court denied movant a fair trial where it failed to conduct a hearing to determine whether the implied bias existed," where "[t]he Government informed the Trial Court that the decedent's brother recognized one of the sitting Jurors and the Juror recognized him, and that they had a working relationship." (Dkt. No. 753 at 7). Cruz further notes that "Trial Counsel failed to object to the [T]rial Court ruling on that issue and investigate further," and that "Appellate Counsel [did not] inform Movant that such an event existed in the Trial Transcripts. *Id.*

[9] Cruz describes these grounds as follows: "Whether the trial court violated Movant's Sixth Amendment right to confrontation where it admitted Ms. Michaud's [expert] testimony and [expert] report that's based on testimonial hearsay," because "[Ms.] Michaud's testimony and [r]eport are based on testimonial hearsay, [because] she testified that when she analyzed the known fiber and the questionable fiber, her conclusions go through a confirmation process with other testing specialists that conducted the actual testing to confirm her conclusion. Hence, Ms. Michaud was used as a transmitter for the other specialists[] that conducted the actual testing, that Movant ha[d] a right to confront and cross examine." (Dkt. No. 753 at 8). Cruz further notes that "Appellate counsel refused to raise this claim when it was brought to his attention." *Id.*

[10] Cruz describes these grounds as follows: "Whether Ms. Michaud's [expert] report was testimonial hearsay and its admission, without the accompanying testimony of those specialists who conducted the testing, violated Movant's Sixth Amendment right," where "Ms. Michaud's testimony that the sweater was seized from Movant's residence, and the fiber found in the Chevey

**(6)** Cruz argues that the trial court improperly admitted Michaud's expert testimony and expert report for purposes of establishing the truth of the matters asserted therein, thereby violating his due process rights. Relatedly, Cruz argues that his appellate counsel was ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[11]

**(7)** Cruz argues that the trial court improperly instructed the jury with respect to Michaud's expert testimony and expert report insofar as the trial court did not issue a limiting instruction to the effect that the jury should not rely on Michaud's testimony and report for the truth of the matters asserted therein, thereby violating his due process rights. Relatedly, Cruz argues that his trial counsel was ineffective in failing to request a jury instruction to this effect, thereby violating his Sixth Amendment right to effective counsel.[12]

### Grounds Relating to Grand Jury Testimony

**(8)** Cruz argues that the trial court improperly admitted transcripts of the grand jury testimony of two grand jury witnesses who Cruz argues the Government improperly interrogated outside the presence of the grand jury, in violation of his due process rights. Relatedly, Cruz argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[13]

---

Cavalier are consistent, is hearsay because she relied on other specialists to form her conclusion." (Dkt. No. 753 at 10). Cruz further notes that "Appellate counsel refused to raise this claim, because he claim[ed] it does not have merit." *Id.*

[11] Cruz describes these grounds as follows: "Whether Ms. Michaud's testimony and report that is based on testimonial hearsay were admitted for the purpose of establishing truth of the matter, thus violating Fed. R. Evid. 703," where "the Trial Court failed to give a [limiting] Jury instruction about expert testimony." (Dkt. No. 753 at 11). Cruz further notes that "Appellate Counsel refused [to raise] this claim, stating that Trial Counsel did not object." *Id.* at 12.

[12] Cruz describes these grounds as follows: "Whether movant was denied a fair trial where the trial court failed to give a limiting jury instruction" where "Ms. Michaud testified that "[fibers are] mass produced . . . over 80 billion tons of fibers are produced world-wide . . . it becomes very unlikely to find a fiber that's associated with a particular garment, if that garment hasn't been in that area. The Trial Court should have given a [limiting] Jury instruction about Ms. Michaud's expert opinion and Report." (Dkt. No. 753 at 13). Cruz further notes that "Appellate Counsel refused [to raise] this claim, because Trial Counsel failed to request a Jury Instruction." *Id.*

[13] Cruz describes these grounds as follows: "Whether movant was denied a fair trial where the government misused Fed. R. Crim. P. Rules 15 and 17 to conduct investigatory interrogation and depositions of grand jury witnesses outside the presence of the grand jury," where "[t]he Prosecuting Attorney[s] conducted investigatory investigations of Grand Jury witnesses 'Tyiasha Moore' and 'Angel Ayala' outside the presence of the Grand Jury. Then [the Government] told

**(9)** Cruz argues that the Government committed prosecutorial misconduct when it interrogated a grand jury witness outside the presence of the grand jury, in violation of Cruz's due process rights. Relatedly, Cruz argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[14]

**(10)** Cruz argues that his appellate counsel was ineffective in failing to argue that the trial court should have excluded transcripts of the grand jury testimony of two witnesses, thereby violating his Sixth Amendment right to effective counsel.[15]

### Grounds Relating to Tape Recording

**(11)** Cruz argues that the trial court improperly excluded an exculpatory tape recording, thereby violating his due process rights. Relatedly, Cruz argues that his appellate counsel was ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[16]

**(12)** Cruz's twelfth grounds for relief are duplicative of his eleventh grounds for relief.[17]

---

the Movant's Trial Counsel, the Court, and the jury that [it] was a Grand Jury Proceeding." (Dkt. No. 753 at 14). Cruz further notes that he "told Appellate Counsel about [this issue] but [Appellate] Counsel failed to raise this issue[.]" *Id.* at 15.

[14] Cruz describes these grounds as follows: "Whether prosecutorial misconduct denied movant a fair trial where the government's attorneys and case agents misused Fed. R. Crim. P. Rule 17 to facilitate 'investigatory interrogation' of a grand jury witness Tyiasha Moore outside the presence of the grand jury" because "Tyiasha Moore stated at trial that she did not receive a subpoena to appear before the Grand Jury. However, the Government arrested her for failing to appear before the Grand Jury, then conducted an investigatory interrogation,' and used that testimony at trial." (Dkt. No. 753 at 16). Cruz further notes that "Appellate Counsel refused to raise this claim because [Appellate Counsel] said I cannot get each and every issue raised." *Id.*

[15] Cruz describes these grounds as follows: "Whether appellate counsel was ineffective where he refused to raise issue that suppression [of transcripts of Tyiasha Moore and Angel Ayala's grand jury testimony] was required" because "Trial Counsel objected when the Government turned over transcripts with testimony of Tyiasha Moore and Angel Ayala as being late." (Dkt. No. 753 at 17).

[16] Cruz describes these grounds as follows: "Whether movant was denied due process and a fair trial where the trial court applied strict rules of evidence to exclude a material and favorable tape recording" where "Trial [C]ounsel attempted to introduce a Tape-Recording produced by Armando Cruz and Agent Goodman, but the Trial Court applied strict rules of evidence that excluded the Tape-Recording." (Dkt. No. 753 at 19). Cruz further notes that "Appellate Counsel refused to raise this claim . . . stating that [Cruz] cannot raise all these claims [on appeal]." *Id.*

[17] Cruz describes these grounds as follows: "Whether Armando Cruz's statements on the tape recording are not hearsay, but fall under the non-hearsay [exception] under Fed. R. Evid. 801(d)(2)

**(13)**   Cruz argues that his appellate counsel was ineffective in failing to argue that the trial court should have admitted the tape recording, thereby violating his Sixth Amendment right to effective counsel.[18]

### Grounds Relating to Jury Instructions

**(14)**   Cruz argues that the trial court improperly instructed the jury with respect to Count 6 (Causing the Death of a Person Through the Use of One or More Firearms in violation of 18 U.S.C. § 924(j)(1)), and that the instructions the trial court gave improperly relieved the Government of its burden to prove that charge beyond a reasonable doubt, thereby violating his due process rights. Relatedly, Cruz argues that his appellate counsel was ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[19]

### Grounds Relating to Double Jeopardy

**(15)**   Cruz argues that the sentencing court improperly imposed consecutive sentences on Count 5 (First-Degree Murder in violation of 14 V.I.C. § 922(a)(2)) and Count 6 (Causing the Death of a Person Through the Use of One or More Firearms in violation of 18 U.S.C. § 924(j)(1)), thereby violating his due process rights and subjecting Cruz to double jeopardy in violation of the Fifth Amendment. Relatedly, Cruz argues that his appellate counsel was ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[20]

---

and exclusion denied movant a fair trial," because "Armando Cruz was a Government informant working to assist law-enforcement officers in detecting crimes. Therefore his statements must be imputed to the Government, thus, it's non-hearsay." (Dkt. No. 753 at 20). Cruz further notes that "Appellate Counsel failed to raise this claim[.]" *Id.* at 21.

[18] Cruz describes these grounds as follows: "Whether appellate counsel was ineffective in refusing to argue on appeal the exclusion of the tape recording" because "Appellate Counsel could have raised this claim because Trial [Counsel] objected and argued this issue. Therefore, it was ripe for Appeal." (Dkt. No. 753 at 22).

[19] Cruz describes these grounds as follows: "Whether the [Trial] [C]ourt's jury instruction on Count Six relieved the government's burden, thus violating movant's due process rights" because "the Trial Court did not clarify 'in relation to' or 'in furtherance of' the Crime of violence, which were the elements found by the Jury." (Dkt. No. 753 at 23). Cruz further notes that "Appellate Counsel failed to raise this claim[.]" (Dkt. No. 753 at 24).

[20] Cruz describes these grounds as follows: "Whether the court violated movant's Fifth Amendment right when it imposed consecutive sentences and violated the double jeopardy clause" because "[t]he Sentencing Court imposed consecutive sentences on Counts [5 and 6] even though both counts represent a single offense[.]" (Dkt. No. 753 at 25). Cruz further notes that "Appellate Counsel failed to raise this issue[.]" *Id.*

### Grounds Relating to Presentence Investigation Report

**(16)** Cruz argues that the sentencing court improperly failed to inquire as to whether Cruz and his trial counsel had an opportunity to review the Revised Presentence Investigation Report, thereby depriving Cruz of an opportunity to object to the contents of that report and violating his due process rights. Relatedly, Cruz argues that his appellate counsel was ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[21]

**(17)** Cruz argues that the sentencing court improperly adopted the Presentence Investigation Report and imposed sentence based upon inaccurate information contained in that report, thereby violating his due process rights. Relatedly, Cruz argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[22]

**(18)** Cruz argues that his appellate counsel was ineffective in failing to object when the sentencing court neglected to inquire as to whether Cruz and his trial counsel had an opportunity to review the Revised Presentence Investigation Report; in failing to object to inaccurate information in the report, which the sentencing court adopted; and in failing to object to the sentencing court's factual findings, thereby violating his Sixth Amendment right to effective counsel.[23]

---

[21] Cruz describes these grounds as follows: "Whether the sentencing court violated movant's due process rights under Fed. R. Crim P. Rule 32 [and] counsel was ineffective in failing to object" where [t]he Sentencing Court failed to inquire whether Movant had an opportunity to go over the [Revised Presentence Investigation Report] with counsel, [thus failing] to allow Movant to make specific objections [p]ursuant to Fed. R. Crim. P. Rule 32." (Dkt. No. 753 at 26). Cruz further notes "Appellate Counsel failed to raise this issue." *Id.* at 27.

[22] Cruz describes these grounds as follows: "Whether movant was denied Fifth and Sixth [Amendment] Constitutional rights where the sentencing court adopted inaccurate information and made factual findings" where "[t]he Sentencing Court adopted the [Revised Presentence Investigation Report's] factual determinations and conclusions, and then made factual finding[s] and [imposed sentence on such a basis,] and trial counsel failed to object to the [Revised Presentence Investigation Report]. (Dkt. No. 753 at 28). Cruz further notes that "Appellate Counsel failed to raise this issue." *Id.*

[23] Cruz describes these grounds as follows: "Whether counsel was ineffective where he failed to launch three objections at sentencing," because "[Trial] Counsel failed in not asking the [S]entnecing Court whether Movant had an opportunity to go over the [Revised Presentence Investigation Report] with counsel; counsel also failed to object to the inaccurate information stated in the [Revised Presentence Investigation Report]; [a]nd Counsel failed to object to the Court's factual findings [when the Sentencing Court imposed sentence]. (Dkt. No. 753 at 29).

In addition to the eighteen grounds for relief initially specified in Cruz's Motion to Vacate, the Court will also address the eight additional grounds for relief Cruz specifies in his Motions to Supplement. These eight additional grounds are:

### **Grounds Raised in Cruz's Second Motion to Supplement**

**(19)**   Cruz argues that the trial court improperly closed the courtroom to the public on a day during which the court instructed the jury, thereby violating his Sixth Amendment right to a public trial. Relatedly, Cruz argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[24]

**(20)**   Cruz argues that the trial court improperly held an *ex parte* conference with a key Government witness, and that the trial court improperly prohibited Cruz from cross-examining the witness with respect to his statements in the *ex parte* conference, thereby violating his due process rights and Sixth Amendment right of confrontation. Relatedly, Cruz argues that both his trial and appellate counsel were ineffective in failing to raise this issue, thereby violating his Sixth Amendment right to effective counsel.[25]

---

[24] In Cruz's Second Motion to Supplement, he moved the Court to permit him to adopt the third ground for relief specified in the Motion to Vacate filed by one of his co-defendants, Angel Rodriguez ("Rodriguez"). (Dkt. No. 870). The Court granted that Motion. (Dkt. No. 887). The third ground specified in Rodriguez's Motion to Vacate is "[t]he unauthorized closure of courtroom to public and press by court security officer during entire day of charge to jury [in violation of] Sixth Amendment [right to a public trial]," because the trial court closed the courtroom "on February 1, 2007 for the entire day." (Dkt. No. 746 at 17, 25; *see also id.* at 17-25 (elaborating upon this argument)).

[25] In Cruz's Second Motion to Supplement, he moved to adopt the fourth ground for relief specified in Rodriguez's Motion to Vacate (Dkt. No. 870). The Court granted that Motion. (Dkt. No. 887). The fourth ground specified in Rodriguez's Motion to Vacate is that "the trial judge held an in-chambers *ex parte* conference with [a] key government witness . . . in the absence of prosecutor and defense counsel," in which the key witness explained that "he was being pressed by [a] police agent working for the prosecution to give false testimony" and "needed to be protected from the police," but the trial judge "advised [the witness] not to file any complaint against [the] police officers who had been harassing [him] and encouraging him to give false testimony" and did not permit Rodriguez (and Cruz) to "cross-examine [the witness] about statements [the witness] made during [the] *ex parte* in-chambers conference." (Dkt. No. 746 at 11). Rodriguez's Motion to Vacate argues that these actions violated his (and, by extension, Cruz's) due process rights and Sixth Amendment right of confrontation, *id.*; it also argues that trial and appellate counsel were ineffective in failing to raise these issues, thereby violating Rodriguez's (and, by extension,

### Grounds Relating to Rights Subsequently Recognized by the Supreme Court

**(21)** Cruz argues that some of his convictions must be vacated in light of the Supreme Court's 2013 decision in *Alleyne v. United States*, 570 U.S. 99 (2013).[26]

**(22)** Cruz argues that some of his convictions must be vacated in light of the Supreme Court's 2014 decision in *Rosemond v. United States*, 572 U.S. 65 (2014).[27]

**(23)** Cruz argues that some of his convictions must be vacated in light of the Supreme Court's 2019 decision in *Davis v. United States*, 139 S. Ct. 2319 (2019).[28]

**(24)** Cruz argues that some of his convictions must be vacated in light of the Supreme Court's 2021 decision in *Borden v. United States*, 141 S. Ct. 1817 (2021).[29]

**(25)** Cruz argues that some of his convictions must be vacated in light of the Supreme Court's 2022 decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022).[30]

**(26)** Cruz argues that some of his convictions must be vacated in light of the Supreme Court's 2023 decision in *Lora v. United States*, 143 S. Ct. 1713 (2023).[31]

---

Cruz's) Sixth Amendment right to effective counsel, *id.* at 12. *See also id.* at 11-13 (elaborating upon these arguments).

[26] Dkt. No. 779 (First Motion to Supplement); *see also* Dkt. No. 839 (granting First Motion to Supplement).

[27] Dkt. No. 916 (Third Motion to Supplement); *see also* Dkt. No. 966 (granting Third Motion to Supplement).

[28] Dkt. Nos. 919 and 938 (Fourth and Fifth Motions to Supplement); *see also* Dkt. No. 966 (granting Fourth and Fifth Motions to Supplement).

[29] Dkt. No. 957 (Seventh Motion to Supplement); *see also* Dkt. No. 966 (granting Seventh Motion to Supplement).

[30] Dkt. No. 952 (Sixth Motion to Supplement); *see also* Dkt. No. 966 (granting Sixth Motion to Supplement).

[31] Dkt. No. 989 (Eight Motion to Supplement); *see also* Dkt. No. 990 (granting Eighth Motion to Supplement).

### B.   The Twenty Grounds Specified in Cruz's Initial Motion to Vacate and Second Motion to Supplement

The Court begins with the eighteen grounds initially specified in Cruz's Motion to Vacate, and the two additional grounds specified in his Second Motion to Supplement. The Court concludes that each of these twenty challenges is without merit.

### 1.   Grounds Relating to Ineffective Assistance of Counsel (Ground One)

The first ground for relief Cruz specifies in his Motion to Vacate alleges ineffective assistance of both his trial and appellate counsel. (Dkt. No. 753 at 4).

#### a.   Applicable Legal Principles: Right to Counsel

As a general matter, claims of ineffective assistance of counsel may be properly raised in a motion to vacate under Section 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Garcia*, 516 F. App'x 149, 151 (3d Cir. 2013). To prevail on an ineffective assistance claim, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. 668, 690 (1984). More specifically, a petitioner must demonstrate, by a preponderance of the evidence, both: **(1)** that his counsel's representation was deficient (the "deficiency prong"); and **(2)** that his counsel's deficient performance "prejudiced" his defense (the "prejudice prong"). *Id.* at 687.

To satisfy the deficiency prong, a petitioner must show that his counsel "made errors so serious as to deprive the defendant of a fair trial[.]" *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also id.* at 691 ("An error

14

by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). A court is not required to address the two prongs in order; rather, a court may dispose of an ineffective assistance claim on either prong. *See id.* at 697 (explaining that courts are not required to "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one").

Judicial scrutiny of counsel's performance is highly deferential, and a petitioner must overcome a "strong presumption" that counsel's strategy and tactics "fall[] within the wide range of reasonable professional assistance." *Id*. at 689. Thus, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010). This is particularly true in the context of claims that appellate counsel provided ineffective assistance: While the standard for ineffective assistance of appellate counsel is the same two-prong *Strickland* test as it is for trial counsel, *Smith v. Robbins*, 528 U.S. 259, 285 (2000), focusing on issues most likely to prevail "is the hallmark of effective appellate advocacy," *Smith v. Murray*, 477 U.S. 527, 536 (1986). Accordingly, to establish the deficiency prong with respect to appellate counsel, a petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," and that such issues were "clearly stronger" than those counsel chose to assert. *Smith*, 528 U.S. at 285; *see also Jones v. Barnes*, 463 U.S. 745, 752-54 (1983) (rejecting "*per se*" rule that appellate counsel must raise every nonfrivolous claim). Likewise, to establish the prejudice prong with respect to appellate counsel, a petitioner must show that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000).

### b.  Ground One is Without Merit

The first ground for relief Cruz specifies in his Motion to Vacate alleges ineffective assistance of both his trial and appellate counsel generally, without specifying any particular instance in which his counsel allegedly acted deficiently. (Dkt. No. 753 at 4). However, as explained below, Cruz specifically argues—in the context of nineteen of the other twenty grounds for relief that he specifies—that his trial counsel provided ineffective assistance in nine instances,[32] and that his appellate counsel provided ineffective assistance in sixteen instances.[33] The Court will address each of the specific claims of ineffective assistance in the course of its discussion of the grounds pertaining to each instance. However, to the extent the first ground Cruz specifies in his Motion to Vacate alleges ineffective assistance generally, without reference to these specific instances, the Court finds that Cruz's first ground for relief is without merit because it fails to

---

[32] Specifically, Cruz argues that his trial counsel provided ineffective assistance in the nine instances specified in Grounds 2, 3, 6, 7, 8, 17, 18, 20, and 21 below.

[33] Specifically, Cruz argues that his appellate counsel provided ineffective assistance in the sixteen instances specified in Grounds 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 20, and 21 below. The Court notes that it has liberally construed Cruz's Motion to Vacate to raise ineffective assistance claims with respect to his appellate counsel wherever Cruz argues that his appellate counsel failed to raise an issue, with two exceptions. Those exceptions are Grounds 6 and 7, in which Cruz notes that his appellate counsel failed to raise the claim *because* "Trial Counsel did not object" (Ground 6) and *because* "Trial Counsel failed to request [the relevant] Jury Instruction" (Ground 7). *See generally United States v. Greenspan*, 923 F.3d 138, 147-48 (3d Cir. 2019) (observing that a party must generally object to court ruling or jury instruction to preserve issue for appeal). The Memorandum of Law Cruz submitted in connection with his Motion to Vacate supports the Court's interpretation that Cruz intends Grounds 6 and 7 to target only his trial counsel. (Dkt. No. 756 at 53). Nonetheless, the Court notes that, were it to address the assistance of appellate counsel with respect to the instances specified in Grounds 6 and 7, it would conclude that Cruz has not demonstrated that his appellate counsel was ineffective for the same reasons that the Court concludes that Cruz has failed to demonstrate trial counsel's assistance was ineffective with respect to these instances.

"identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Ground One.

### 2. Grounds Relating to Impaneling of Jurors (Grounds Two and Three)

In his second ground for relief, Cruz argues that the trial court improperly impaneled a juror—Juror No. 6—notwithstanding that Juror No. 6 stated during *voir dire* that she could not be fair and impartial. (Dkt. No. 753 at 5). In his third ground for relief, Cruz argues that the trial court improperly impaneled a juror whom the murder victim's brother recognized during *voir dire* and who had a "working relationship" with the murder victim's brother. *Id.* at 7. Cruz also argues that both his trial counsel and appellate counsel were ineffective in failing to raise these two issues. *Id.* at 5-7.

### a. Applicable Legal Principles: Right to Impartial Jury

The Sixth Amendment guarantees every criminal defendant "the right to a speedy and public trial, by an impartial jury[.]" U.S. Const. amend. VI. The Due Process Clause of the Fifth Amendment complements the Sixth Amendment's guarantee of trial by an impartial jury. *See Morgan v. Illinois,* 504 U.S. 719, 727 (1992) ("[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment."). *Voir dire* examination "serves to protect the right to an impartial jury by providing the parties a means of uncovering juror bias," because "[b]ias that emerges in response to *voir dire* questioning

can lead to excusal of a juror for cause or may facilitate the parties' intelligent exercise of peremptory strikes." *United States v. Mitchell*, 690 F.3d 137, 141 (3d Cir. 2012).

Traditionally, courts have distinguished between "actual" and "implied" biases of jurors. *See id.* at 142 (collecting cases). Actual bias is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality," while implied bias is "bias conclusively presumed as a matter of law"—that is, "bias attributable in law to the prospective juror regardless of actual partiality." *Id.* (internal quotation marks and citations omitted). The doctrine of implied bias "is rooted in the recognition that certain narrowly-drawn classes of jurors are highly unlikely, on average, to be able to render impartial jury service despite their assurances to the contrary." *Id.*

### b.   Grounds Two and Three are Without Merit

**Juror No. 6**. Cruz argues that the trial court improperly impaneled Juror No. 6 notwithstanding that she stated during *voir dire* that she could not impartially decide the case— that is, notwithstanding that she confessed to actual bias. (Dkt. No. 753 at 5; *see Mitchell*, 690 F.3d at 141 (observing that actual bias "may become apparent when a venireperson admits partiality or may be inferred from responses to *voir dire* questioning.")). Cruz's argument with respect to Juror No. 6 is, however, based on an incorrect factual premise, undoubtedly caused by an error in the trial transcript. The trial transcript reflects that Juror No. 6 stated, during *voir dire*, that she could not impartially decide the case. (Trial Tr., Vol. 1, at 35-36). However, the transcript also reflects both that Juror No. 6 was excused for cause, *id.*, and that Juror No. 6 was impaneled, *id.* at 53, 77. The court reporter has submitted an affidavit in which she attests that, upon review of her stenographer notes, she realized that she had made a typographical error. Specifically, while the transcript is accurate insofar as it reflects that Juror No. 6 was impaneled, the transcript is

18

inaccurate insofar as it reflects that Juror No. 6 stated that she could not impartially decide the case and that Juror No. 6 was excused for cause. (Dkt. No. 806-1 (Valerie Lawrence Aff.) at ¶ 6). In actuality, it was Juror No. 26 who stated that she could not impartially decide the case and who was excused for cause. *Id.* The Court accordingly concludes that this challenge is without factual basis or merit.

**Juror Recognized by Decedent's Brother**. Cruz argues that the trial court improperly impaneled this juror insofar as the trial court did not first inquire as to any implied bias that the juror might have had by virtue of his "working relationship" with the murder victim's brother. (Dkt. No. 753 at 7). The Court disagrees that the juror recognized by the victim's brother falls within the "narrowly-drawn classes of jurors [who] are highly unlikely, on average, to be able to render impartial jury service[.]" *Mitchell*, 690 F.3d at 142. Historically, such categories include jurors with "kinship to a party, even if remote; any financial interest in the case; former jury service in the same cause, or . . . connected to the same society or corporation as a party in the case." *United States v. Harper*, No. 11-CR-00004, 2014 WL 3708071, at *9 (D.V.I. July 25, 2014) (citations omitted), *aff'd sub nom. United States v. Flanders*, 635 F. App'x 74 (3d Cir. 2015). The Court is aware of no cases in which courts have found that work acquaintances—even assuming that was the case here—constitute implied bias. *Cf. Smith v. Phillips*, 455 U.S. 209, 212-13 (1982) (holding juror was not impliedly biased where juror submitted job application to prosecutor's office during pendency of trial).

Moreover, while Cruz characterized the murder victim's brother and the juror as having a "working relationship," the trial transcript reflects no more than that the murder victim's brother "recognized one of the jurors, and says that he [the brother] . . . deals with vending machines, wherever [the juror] works, and thinks that [the juror] may have recognized him." (Trial Tr., Vol.

1, at 31). Indeed, Cruz's characterization of the relationship as a "working relationship" creates the appearance of a much closer connection than the facts suggest. Because there is no indication here that the mere recognition of the juror by the murder victim's brother falls within the narrow class of cases that may amount to implied bias, or that any further inquiry of the juror was required, the Court concludes that this challenge is without legal basis or merit.

**Related Ineffective Assistance Claims**. Because these challenges are without merit, the Court finds that neither Cruz's trial counsel's nor appellate counsel's failure or refusal to raise these issues amounted to deficient representation or prejudiced Cruz's defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Grounds Two and Three.

### 3. Grounds Relating to Expert Testimony of Amy Michaud (Grounds Four through Seven)

Cruz's fourth, fifth, sixth, and seventh grounds for relief center on the testimony of Amy Michaud, an expert witness called by the Government.[34] (Dkt. No. 753 at 8-12). Michaud was a forensic analyst with federal law enforcement experience and her expert testimony was offered to show that laboratory testing had revealed that certain clothing fibers found in two of the vehicles that Cruz and his co-defendants car-jacked were a likely match for garments that police discovered at Cruz's home. (Dkt. No. 806 at 34).

---

[34] As the Government notes in its Response to Cruz's Motion to Vacate, "Michaud was a forensic analyst with experience working for the Federal Bureau of Investigation and the Bureau of Alcohol Tobacco and Firearms. She provided testimony about certain fibers found in [] two carjacked automobiles . . . [that had been] compared to fibers taken from garments that were discovered in [Cruz's] home[.]" (Dkt. No. 806 at 34).

While the four grounds that Cruz specifies regarding Michaud's testimony appear virtually indistinguishable, *see supra* nn. 9-12, the force of Cruz's argument is clear. Cruz argues, in essence, that Michaud's testimony and expert report were based upon the results of testing that was actually conducted by Michaud's colleagues, and that the trial court permitted Michaud to testify to conclusions that were based in part on her colleagues' work. (Dkt. No. 753 at 8-10). On these premises, Cruz argues that the trial court deprived him of his Sixth Amendment right to confront the witnesses against him insofar as the trial court did not require Michaud's colleagues to testify alongside her; that the trial court improperly admitted Michaud's testimony and report in violation of the Federal Rules of Evidence that govern the admission of hearsay and expert evidence; and that, even if the trial court properly admitted this evidence, the trial court was required to—but did not—issue a limiting instruction informing the jury that it was not permitted to consider this evidence for the truth of the matters asserted therein. *Id.* Cruz also argues that both his trial counsel and appellate counsel were ineffective in failing to raise these issues. *Id.* at 8-12 (alleging ineffective assistance of appellate counsel with respect to grounds four and five, and ineffective assistance of trial counsel with respect to grounds six and seven).

### a.  Applicable Legal Principles: Confrontation Clause

The Federal Rules of Evidence circumscribe the circumstances in which a non-testifying witness' statement may be introduced at trial. Specifically, the Federal Rules provide that hearsay—out of court statements offered to prove "the truth of the matter asserted" therein—is not admissible at trial, subject to several exceptions not relevant here. Fed. R. Evid. 801(c); Fed. R. Evid. 802-804. The Federal Rules also limit the testimony of live, testifying witnesses. For example, witnesses may not testify to their opinions unless several conditions are met, including that their opinions are "rationally based on" their own observations. Fed. R. Evid. 701.

Expert witness rules, however, are different. The Federal Rules provide that expert witnesses may offer opinion testimony "regarding scientific, technical, or other specialized knowledge," and that—unlike lay witnesses—expert witnesses may offer opinion testimony based on information that they have been "made aware of," as opposed to based only on their own observations. Fed. R. Evid. 702. Moreover, under Rule 703 of the Federal Rules, expert witnesses may base their opinion testimony on information that is not itself admissible as long as other experts in their field "reasonably rely" on that information. Fed. R. Evid. 703.

The Confrontation Clause of the Sixth Amendment guarantees every criminal defendant the right "to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. Thus, under the Confrontation Clause, the government is generally prohibited from introducing a witness' out-of-court statement if that statement is offered for the truth of the matter asserted therein and is "testimonial."[35] *Crawford v. Washington*, 541 U.S. 36, 59 (2004). As relevant here, Rule 703 and the Confrontation Clause intersect when the government seeks to introduce forensic evidence—such as DNA and drug test analyses—without the in-court testimony of all the analysts involved in the testing. This is because forensic testing typically gives rise to statements or reports that are testimonial in nature (and thus fall within the scope of the Confrontation Clause), and because, if only one or some of the analysts involved in the testing testify, those testifying analysts often must

---

[35] As the Supreme Court noted in *Crawford*, "various formulations of this core class of 'testimonial' statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Crawford*, 541 U.S. at 52 (internal quotation marks and citations omitted).

rely in part on their colleagues' testimonial, out-of-court statements. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (holding "certificates" of forensic testing are "quite plainly" testimonial).

Two Supreme Court cases address this intersection in depth. First, in *Bullcoming v. New Mexico,* the Supreme Court addressed whether allowing an analyst to discuss the testimonial statements of a non-testifying colleague—*i.e.,* a report prepared by the non-testifying colleague— violated the Confrontation Clause when the non-testifying colleague's statements were admitted into evidence for the truth of the matters asserted therein. 564 U.S. 647, 652 (2011). *Bullcoming* involved two analysts: a "testing" analyst who performed blood-alcohol concentration testing and prepared a report based on his findings, and a second, "surrogate" analyst who testified to the statements contained in that report—despite having no involvement in the specific testing or the report's preparation—because the testing analyst could not attend the trial. *Id.* The Supreme Court held that the Confrontation Clause prohibited the government from using the testimony of the surrogate analyst to introduce the testimonial statements of the non-testifying, testing analyst, principally because the surrogate analyst ultimately could not provide the defendant with the same opportunity to probe the specifics of the test and statements as the testing analyst. *Id.* at 662.

Next, in *Williams v. Illinois*, the Supreme Court addressed a question left open by *Bullcoming*: Whether allowing an expert witness to discuss the testimonial statements of a non-testifying colleague violated the Confrontation Clause when the non-testifying colleague's statements were not themselves admitted into evidence for the truth of the matters asserted therein. 567 U.S. 50, 56 (2012). In *Williams*, the police sent evidence to a laboratory to create a DNA profile report based on the evidence and, at trial, the Government called a witness who testified that she had compared the laboratory's DNA profile to the state's DNA database and opined that

23

the database revealed that the profile was a match for the defendant. *Id.* at 59-61. However, the DNA profile report itself was not admitted into evidence. *Id.* at 61. The Supreme Court held that this series of events did not violate the Confrontation Clause. According to the four-Justice plurality, *Williams* merely represented an instance of an expert basing her testimony on "facts and data" she had been "made aware of"–exactly as Rule 703 permits—and, to the extent this underlying information was admitted at trial, it was not admitted for the truth of the matters asserted therein, but rather for the "legitimate nonhearsay purpose of illuminating the expert's thought process." *Id.* at 78; *see also id.* at 105 (Thomas, J., concurring in the judgment) ("Of particular importance here, we have made sure that an out-of-court statement was introduced for a legitimate, nonhearsay purpose[.]").

### b.  Grounds Four through Seven are Without Merit

As a preliminary matter, Cruz's challenges to the alleged admission of Michaud's expert report lack a factual basis because Michaud's expert report was neither offered nor admitted into evidence at trial. (*See* Dkt. No. 806-3 (Exhibit List); *see also* Dkt. No. 806 (Gv't. Resp.) at 35 (accurately summarizing exhibits introduced and utilized during Michaud's testimony)). Cruz's challenges in this regard are therefore without merit.

As for Michaud's testimony itself, Michaud stated at least six times that her testimony was based on her own observations and testing. (Trial Tr., Vol. 9, at 96-173). This case, then, is not the case of a "surrogate" analyst substituting for a testing analyst, and is readily distinguishable from *Bullcoming* on those grounds. Cruz, however, specifically argues that the trial court violated his Sixth Amendment right to confront unidentified persons he refers to as the "certifying analysts." (Dkt. No. 756 at 28). He grounds this argument upon the fact that Michaud—who analyzed the fibers and garments for a match while employed by the Federal Bureau of Investigation ("FBI")—

testified that the FBI had a "confirmation process" as part of its "testing protocol," which required that a second "trained examiner" would, in essence, re-test the materials and review the original analyst's documentation if the original analyst's testing revealed a likely match. *Id.* at 33-35 (quoting Trial Tr. Vol. 9, at 109-15).

Cruz's argument fails. First, the fact that a second examiner also performed the same testing and reviewed Michaud's work does not mean that the opinions to which Michaud testified were not based on her own testing. Second, even if Michaud based her opinion in part on the fact that the second examiner reached the same conclusion, her testimony contains no statements from the second examiner, testimonial or otherwise. Thus, her testimony is simply an example of an expert basing her conclusion in part on facts that she has been "made aware of," as permitted by Rule 703. Fed. R. Evid. 703; *Williams*, 567 U.S. at 78. Third, to the extent that Michaud made mention of the second examiner at all, such testimony was not offered for the truth of the matter asserted—*i.e.*, for the fact that the fibers and garment were a likely match—but rather for the legitimate nonhearsay purpose of demonstrating that Michaud complied with standards generally applicable to her field. (Trial Tr. Vol. 9, at 108-17).

In view of the foregoing, the Court concludes that the challenges Cruz specifies in his fourth, fifth, sixth, and seventh grounds for relief are without factual or legal basis or merit.

**Related Ineffective Assistance Claims**. Because these challenges are without merit, the Court finds that neither Cruz's trial counsel's nor appellate counsel's failure or refusal to raise these issues amounted to deficient representation or prejudiced Cruz's defense.[36] *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285.

---

[36] Also bearing on Cruz's ineffective assistance claims is the fact that both *Bullcoming* and *Williams* were decided in the years following his trial, as was *Melendez-Diaz.*

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Grounds Four through Seven.

### 4. Grounds Relating to Grand Jury Testimony (Grounds Eight through Ten)

Cruz's eighth, ninth, and tenth grounds for relief center upon the grand jury testimony of two witnesses, Tyiasha Moore and Angel Ayala. (Dkt. No. 753 at 14-17). While Cruz's challenges appear virtually indistinguishable, *see supra* nn. 13-15, the thrust of these challenges is that the Government allegedly violated Cruz's due process rights by improperly interrogating Moore and Ayala outside the presence of the grand jury in violation of Rule 15 of the Federal Rules of Criminal Procedure (which governs the use of depositions in criminal cases), and in violation of Rule 17 of the Federal Rules of Criminal Procedure (which governs the use of subpoenas in criminal cases). *Id.* at 14-16. Cruz also argues that both his trial counsel and appellate counsel were ineffective in failing to raise this issue. *Id.* In addition, Cruz's tenth ground is a stand-alone challenge to the effect that his appellate counsel was ineffective in failing to argue that the trial court improperly failed to exclude the transcripts of Moore's and Ayala's testimony at trial. *Id.* at 17.

Cruz's allegation that the Government undertook improper "investigatory interrogations" of Moore and Ayala is without any factual basis. *Id.* at 15. Both Moore and Ayala were brought before the trial court after failing to appear before the grand jury as required. (Dkt. No. 881 at 12). Those proceedings before the Court, wherein the Court questioned them, then became part of the Grand Jury proceedings.[37] *Id.* Contrary to Cruz's contention, these proceedings did not constitute

---

[37] Moore had previously testified before the grand jury on June 8, 2004. (Trial Tr., Vol. 13, at 18-19). The Government subpoenaed her to testify again on January 19, 2006, but she did not appear. *Id.* at 21, 131.

depositions and, as such, do not implicate Rule 16. Similarly, Cruz's contention that the Government did not subpoena Moore to testify at the grand jury—and that this failure violated Rule 17—is misplaced, as the record makes clear that the Government did in fact subpoena Moore. (Trial Tr., Vol. 13, at 21, 131).

In view of the foregoing, the Court concludes that the challenges Cruz specifies in his eighth, ninth, and tenth grounds for relief are without factual or legal basis or merit.

**Related Ineffective Assistance Claims**. Because these challenges are without merit, the Court finds that neither Cruz's trial counsel's nor appellate counsel's failure or refusal to raise these issues amounted to deficient representation or prejudiced Cruz's defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Grounds Eight through Ten.

### 5. Grounds Relating to Tape Recording (Grounds Eleven through Thirteen)

Cruz's eleventh, twelfth, and thirteenth grounds for relief center upon a tape recording of a conversation between Armando Cruz—a government witness—and Agent Goodman, which the trial court did not permit the defense to admit into evidence. (Dkt. No. 753 at 19-22). In the tape recording at issue, Armando Cruz states that he made $700 per week as a fisherman during a certain time frame, while on cross-examination by defense counsel at trial Armando Cruz stated that he was unemployed during that same time frame. (Trial Tr., Vol. 13, at 69). Defense counsel did not attempt to introduce this statement during the cross-examination of Armando Cruz, but instead attempted to introduce it after Armando Cruz's testimony had concluded, at which time the trial court found the tape recording to be inadmissible. (Dkt. No. 881 at 14). Cruz does not

27

argue that his trial counsel was ineffective with respect to these events; instead, he argues that his appellate counsel was ineffective in failing to raise this issue on appeal.[38] (Dkt. No. 753 at 22).

### a.  Applicable Legal Principles: Extrinsic Evidence and Hearsay

Cruz argues that the tape recording was admissible under two of the Federal Rules of Evidence. First, Rule 613(b) provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Fed. R. Evid. 613(b). Second, Rule 801(d)(2)(A) provides that statements that would otherwise qualify as presumptively inadmissible hearsay statements do not qualify as hearsay when "[t]he statement is offered against an opposing party and was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A).

### b.  Grounds Eleven through Thirteen are Without Merit

This Court previously addressed the two arguments Cruz raises here in its July 8, 2008 Memorandum Opinion, in which it granted in part and denied in part Cruz's and his three codefendants' Motions for Judgments of Acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. *See United States v. Berrios*, No. 04-CR-00105, 2008 WL 2704884, at *9-*11 (D.V.I. July 8, 2008). There, the Court concluded that Rule 801(d)(2)(A) did not warrant admission of the tape-recording because Armando Cruz was not a party to the litigation or a representative of the Government, meaning that Rule 801(d)(2)(A) is inapplicable. *Id.* at *10.  The

---

[38] Again, it is difficult determine what, if any, distinctions Cruz is making among these three grounds. *See supra* nn. 16-18. Grounds eleven and twelve outline the same substantive challenge to the trial court's ruling and allege that appellate counsel was ineffective in failing to raise the issue, while ground thirteen addresses the alleged ineffectiveness of appellate counsel's assistance with respect to this issue.

Court likewise concluded that Rule 613(b) did not warrant admission of the tape-recording because "evidence of a prior inconsistent statement of a witness is only admissible if the 'witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.'" *Id.* (quoting Fed. R. Evid. 613(b)). As the Court explained, "[w]hen called to the stand, Armando Cruz testified that he earned about $700 per week as a fisherman," and "[n]one of the Defendants cross-examined Armando Cruz on this point;" however, Cruz later "sought to introduce the recorded conversation in his case-in-chief," arguing "that the evidence that Armando Cruz was unemployed, unlike his testimony that he was earning $700 weekly, would show that he was financially motivated to work with the investigators." *Id.* By the time Cruz sought to admit the tape recording into evidence, however, "Armando Cruz could not be readily recalled since Armando Cruz testified that he was living somewhere other than St. Croix," and Cruz "never requested that Armando Cruz remain on St. Croix until the conclusion of the trial." *Id.* By consequence, "[w]hen [] Cruz attempted to introduce the recording, Armando Cruz was no longer available and would not be afforded an opportunity to explain or deny his recorded statement that he was unemployed," meaning that "the recording was inadmissible under Rule 613(b) of the Federal Rules of Evidence." *Id.* The Court was therefore correct to rule that the tape-recording was extrinsic evidence inadmissible pursuant to Rule 613(b). *Id.*

In view of the foregoing, the Court concludes that the challenges Cruz specifies in his eleventh, twelfth, and thirteenth grounds for relief are without factual or legal basis or merit.

**Related Ineffective Assistance Claims**. Because these challenges are without merit, the Court finds that Cruz's appellate counsel's failure or refusal to raise these issues neither amounted to deficient representation nor prejudiced Cruz's defense. *Smith*, 528 U.S. at 285.

29

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Grounds Eleven through Thirteen.

### 6. Grounds Relating to Jury Instructions (Ground Fourteen)

In his fourteenth ground for relief, Cruz argues that the trial court's jury instructions on the charge of Count 6, Causing the Death of a Person Through the Use of One or More Firearms in violation of 18 U.S.C. § 924(j)(1), improperly relieved the Government of its burden to prove that charge beyond a reasonable doubt, and that his appellate counsel was ineffective in failing to raise this issue, thereby violating Cruz's Sixth Amendment right to effective counsel. (Dkt. No. 753 at 23-24).

In assessing the sufficiency of jury instructions, courts consider "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." *United States v. Bullard*, 38 F. App'x 753, 754 (3d Cir. 2002) (quoting *Bennis v. Gable,* 823 F.2d 723, 727 (3d Cir.1987)). In other words, courts assess whether, "[t]aking the jury instructions as a whole," the instructions are "confusing [or] misleading." *Id*. at 755.

Cruz argues that the jury instructions in his case were deficient because they (1) "informed the Jury that [he]could be convicted . . . even if he did not have the specific intent to kill"; (2) did not define the term "in furtherance of"; and (3) did not define the term "in relation to." (Dkt. No. 756-3 at 5). Each of these arguments is without factual basis. The Court instructed the jury on the *mens rea* element of Count 6 as follows:

> To kill with "malice aforethought" means an intent at the time of the killing to take the life of another person, either deliberately and intentionally, or to willfully act with callous and wanton disregard for human life. The Government need not prove that the Defendant under consideration hated the person killed or felt ill will toward the victim at the time, but the evidence must establish beyond a reasonable doubt that the Defendant

30

> under consideration acted either with the intent to kill or to willfully do acts with callous and wanton disregard for the consequences and which the Defendant under consideration knew would result in a serious risk of death or serious bodily harm.

(Dkt. No. 806-6). Further, the Court defined the terms "in furtherance of" and "in relation to" when instructing the jury on Count 4, as follows:

> [T]o carry a firearm "*in relation to*" an offense means that there must be a connection between the Defendant under consideration, the firearm, and the crime of violence so that the presence of the firearm was not accidental or coincidental, but facilitated the crime by serving some important function or purpose of the criminal activity. To possess a firearm "*in furtherance of*" an offense means something more than mere presence of a firearm; it must be shown that the firearm helped, furthered, promoted or advanced the offense in some way.

(Dkt. No. 806-7). Taking these jury instructions as a whole, then, the Court finds that these instructions adequately present the issues and are not misleading.

In view of the foregoing, the Court concludes that the challenges Cruz specifies in his fourteenth ground for relief are without factual or legal basis or merit.

**Related Ineffective Assistance Claim**. Because this challenge is without merit, the Court finds that Cruz's appellate counsel's failure or refusal to raise this issue neither amounted to deficient representation nor prejudiced Cruz's defense. *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Ground Fourteen.

### 7. Grounds Relating to Double Jeopardy (Ground Fifteen)

In his fifteenth ground for relief, Cruz argues that the consecutive sentences the sentencing court imposed on counts five and six—First-Degree Murder in violation of territorial law, 14 V.I.C. § 922(a)(2); and Causing the Death of a Person Through the Use of One or More Firearms

31

in violation of federal law, 18 U.S.C. § 924(j)(1)—violated the Double Jeopardy Clause of the Fifth Amendment because the factual predicate for both counts was the same murder. (Dkt. No. 753 at 25). Relatedly, Cruz argues that his appellate counsel was ineffective in failing to raise this argument. *Id.*

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. That "constitutional guarantee" provides "three separate constitutional protections," including the "protect[ion] against multiple punishments for the same offense"—that is, the protection against "multiplicity." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1968); *United States v. Lacy*, 446 F.3d 448, 455 (3d Cir. 2006). Multiplicity occurs when a single offense is charged in more than one count of an indictment. *United States v. Kennedy*, 682 F.3d 244 (3d Cir. 2012).

The precise challenge Cruz brings here—arguing that his consecutive sentences for murder under 14 V.I.C. § 922(a)(2) and 18 U.S.C. § 924(j)(1) violate the Double Jeopardy clause—was addressed by the Third Circuit in *United States v. Berrios* after one of Cruz's co-defendants brought the same challenge on direct appeal. *See* 676 F.3d at 138-144. The Third Circuit rejected the argument, holding that cumulative punishment under the two statutes does not violate the Double Jeopardy Clause. *Id. Berrios* remains good law in this Circuit, and the Court accordingly finds that this challenge is without merit.

**Related Ineffective Assistance Claim.** Cruz's appellate counsel did not raise this issue on appeal. *Id.* Regardless of whether Cruz's appellate counsel's failure or refusal to raise this claim constituted deficient representation—a question the Court does not reach here—it is clear that counsel's decision did not prejudice Cruz in light of the Third Circuit's rejection of the claim in *Berrios*. (*See* Dkt. No. 881 (R&R) at 17 ("The failure of appellate counsel to raise this issue is

rendered moot by the rejection of the claim.")). Cruz's ineffective assistance claim is therefore without merit. *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Ground Fifteen.

### 8.  Grounds Relating to Presentence Investigation Report (Grounds Sixteen through Eighteen)

Cruz's sixteenth, seventeenth, and eighteenth grounds for relief center upon the use of the Revised Presentence Investigation Report at his sentencing. (Dkt. No. 753 at 26-29). In these three grounds, Cruz argues that the sentencing court improperly failed to inquire as to whether Cruz and his trial counsel had an opportunity to review the report, and that the court improperly adopted the "factual determinations and conclusions" of the Presentence Investigation Report and imposed sentence based upon inaccurate information contained therein. *Id.* Relatedly, Cruz argues that his trial and appellate counsel were ineffective in failing to object to these actions by the sentencing court and raise them on appeal, respectively. *Id.*

### a.  Applicable Legal Principles: Presentence Investigation Report

Rule 32 of the Federal Rules of Criminal Procedure requires the sentencing court to "verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A). The Third Circuit has held that Rule 32 does not require a sentencing court to ask a defendant if he specifically has read the report, but only to "somehow determine that the defendant has had this opportunity." *United States v. Mays,* 798 F.2d 78, 80 (3d Cir. 1986). Prejudice to the defendant is not presumed if the sentencing court failed to make such a determination. *Wilkerson*, 453 Fed.Appx. 185, 189-91 (3d Cir. 2011).

33

**b.  Grounds Sixteen through Eighteen are Without Merit**

Cruz was sentenced twice: The first sentencing hearing was held on June 11, 2007, and the second sentencing hearing was held on January 26, 2009, after the Court dismissed counts three and four following the first hearing. (*See* Dkt. No. 806-8 (Jun. 11, 2007 Tr.); Dkt. No. 806-9 (Jan. 26, 200 Tr.)). At the first sentencing hearing, the Court inquired as to whether Cruz and his counsel had an opportunity to review the presentence investigation report, and Cruz's trial counsel informed the Court that "I visited Mr. Cruz twice in Guaynabo [Metropolitan Detention Center] to go over the presentence report. And each time I went there he refused to go over the presentence report with me, because he said he wanted certain documents." (Dkt. No. 806-8 at 38). Cruz's trial counsel also represented that he had reviewed the report, *id.* at 43, and that he "gave the revised copy of the presentence report to Mr. Cruz, who still has it," *id.* At the second sentencing hearing, the sentencing court did not ask whether Cruz and his counsel had again reviewed the report. At that hearing, however, Cruz's trial counsel informed the Court that he "met with Mr. Cruz this morning, and explained to him the reason for the resentencing, that he had been acquitted of Counts 3 and 4" (Dkt. No. 806-9 at 3), and that "there has been no change [since the last sentencing hearing] that requires me to add for reconsideration and amendments of the case," *id.* at 2.

In essence, then, the sentencing court inquired of Cruz's counsel whether Cruz had the opportunity to review the presentence investigation report at the first sentencing hearing and trial counsel responded, in effect, that he had. As Magistrate Judge Cannon correctly observed in his R&R, "[n]othing in [Rule 32] itself, or in the Third Circuit case law, imposes an affirmative duty on the Court to ask the defendant directly whether he or she 'has had an opportunity to read the report, whether the defendant and counsel have discussed the report and whether the defendant wishes to challenge any facts in the report.'" (Dkt. No. 881 at 18 (quoting *Mays*, 798 F.2d at 80)).

Moreover, Cruz "did not contradict his counsel regarding [trial counsel's aforementioned] statements nor did he raise any objections specific to the presentence investigation report when he was allowed to address the Court." *Id.* at 19 (citing Dkt. No. 806-8 at 4-11). Still further, Cruz's trial counsel left the presentence investigation report with Cruz after Cruz initially refused to review the report. In these circumstances, the Court finds that Cruz clearly "had the opportunity to read the [Revised Presentence Investigation Report] prior to sentencing." *Mays*, 798 F. 2d at 79.

With respect to Cruz's allegation that the report contained "inaccurate information" that the Court adopted when it made its factual findings, Cruz seemingly takes issue with the parts of the report that merely recite the charges contained in the indictment. (Dkt. No. 756-2 at 21-23). This information is not inaccurate and this challenge accordingly lacks a factual basis.

In view of the foregoing, the Court concludes that the challenges Cruz specifies in his fifteenth through eighteenth grounds for relief are without factual or legal basis or merit.

**Related Ineffective Assistance Claims**. Because these challenges are without merit, the Court finds that neither Cruz's trial counsel's nor appellate counsel's failure or refusal to raise these issues amounted to deficient representation or prejudiced Cruz's defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Grounds Sixteen through Eighteen.

### 9. Grounds Relating to Right to Public Trial (Ground Nineteen)

In his nineteenth ground for relief, Cruz argues that the trial court's closure of the courtroom on February 1, 2007—during the course of the court's jury instructions—violated his Sixth Amendment right to a public trial. (Dkt. No. 870; Dkt. No. 746 at 17-25). Cruz additionally

argues that his trial and appellate counsel were ineffective insofar as they failed to raise this issue. (Dkt. No. 746 at 16).

### a.   Applicable Legal Principles: Right to Public Trial

The right to a public trial originates in the Sixth Amendment, which directs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." U.S. Const. amend. VI. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia,* 467 U.S. 39, 46 (1984) (quoting *Gannett Co. v. DePasquale,* 443 U.S. 368, 380 (1979)).

"In general, the denial of a defendant's right to a public trial is a 'structural error'—*i.e.,* a defect 'affecting the framework within which the trial proceeds'—requiring reversal irrespective of whether the defendant demonstrates the error prejudiced his substantial rights." *United States v. Greene,* 431 Fed. Appx. 191, 195 (3d Cir.2011) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 310 (1991)). "It does not necessarily follow, however, that every deprivation in a category considered to be 'structural' constitutes a violation of the Constitution[.]" *Simon v. Government of the Virgin Islands.* 63 V.I. 902, 116 F. Supp. 3d 529, 564 (D.V.I. 2015) (quoting *Gibbons v. Savage,* 555 F.3d 112, 120 (2d Cir.2009)), *aff'd in part, vacated in part, rev'd in part on other grounds sub nom. Simon v. Gov't of the Virgin Islands*, 929 F.3d 118 (3d Cir. 2019). "Not every courtroom closure or denial of public access to court proceedings violates a defendant's right to a public trial or otherwise implicates a defendant's Sixth Amendment rights." *Id.* (citing *United States v. Ivester,* 316 F.3d 955, 958–59 (9th Cir. 2003) and *Peterson v. Williams,* 85 F.3d 39, 42–43 (2d Cir. 1996)). Rather, "there are certain instances in which exclusion [of the public] cannot

36

be characterized properly as implicating the constitutional guarantee." *Id.* (citing *Braun v. Powell,* 227 F.3d 908, 918 (7th Cir. 2000), *United States v. Lnu,* 575 F.3d 298, 307 (3d Cir. 2009), and *United States v. Patton,* 502 Fed. Appx. 139, 142 (3d Cir. 2012)).

### b.  Ground Nineteen is Without Merit

Cruz—through codefendant Rodriguez—alleges that the trial closed for the entire day on February 1, 2007. (Dkt. No. 746 at 16). This characterization is belied by the facts.

The record reflects that approximately halfway through the charge to the jury, the trial judge called counsel to sidebar and informed counsel:

> I was just notified that the Marshals have locked the courtroom. It has been the practice from Judge Christian, but under subsequent attacks, the nature of the trial, I wanted to let you know that this had come to my attention, and I had ordered the Marshal to lock the courtroom.

(Trial Tr., Vol. 16, at 28). However, the record is devoid of any evidence that the Court excluded members of the public from the courtroom during instructions, and the Government represents that "many spectators were in the courtroom during the closing arguments, and they remained in the courtroom during the jury charge." (Dkt. No. 902 at 3).[39] Instead, it appears that the Court acceded to the Marshals' common practice of locking the courthouse doors to prevent any ingress or egress during the time that the jury was being charged. (Trial Tr., Vol. 16, at 28). The question therefore becomes whether this action—a temporary prohibition on ingress and egress into the courtroom— "implicat[es] the constitutional guarantee" to a public trial afforded by the Sixth Amendment. *Simon v. Government of the Virgin Islands.* 116 F. Supp. 3d at 564.

---

[39] The Government's Response to Cruz's Motion to Vacate was drafted by the Government's trial counsel.

The Appellate Division of this Court addressed strikingly similar circumstances in *Simon v. Government of the Virgin Islands. Id.* In *Simon*, the question presented was "whether locking the courtroom doors during closing arguments and jury instructions . . . constitutes a Sixth Amendment violation." *Id.* at 564. As here, *Simon*, did not involve a complete closure of the courtroom; rather, the judge temporarily limited spectators' ingress and egress during jury instructions (and closing arguments). *See id.* at 566.

The *Simon* Court held that the temporary prevention of the public's ingress and egress from the courtroom—during closing arguments and jury instructions—does "not rise to the level of a denial of public access, much less a Sixth Amendment violation." *Id.* at 567. In reaching this conclusion, the *Simon* Court noted that "[d]espite the locking of the doors, the judge did not remove members of the public from the courtroom, nor did he forbid them to leave. Rather, he simply attempted to restrict their movement out of the courtroom to breaks when one attorney finished his closing and before the next one began to speak, in order to avoid jury distraction during these important parts of the proceeding." *Id.* at 566. The *Simon* Court also noted that, "[n]otwithstanding the locked courtroom doors, the record does not indicate that anyone who wished to enter or leave the courtroom was prevented from doing so, and Simon does not so argue. Moreover, Simon does not claim that there was anything but free and unrestricted access to the courtroom at all other times during the trial." *Id.* at 566-67.

At least one other district court in the Third Circuit has reached the same conclusion as the *Simon* court. *See United States v. Cannon,* No. 11-CV-00160, 2011 WL 1103656, at *4 (E.D. Pa. Mar. 23, 2011) (where ingress and egress from courtroom was not permitted during jury instructions, anyone who wished to remain could do so, and where there was no evidence that anyone was excluded during the charge, there were no grounds for objecting to this procedure).

Although the Third Circuit has not expressly addressed this issue, other Circuits have also reached the same conclusion in the same or comparable circumstances. *See United States v. Scott,* 564 F.3d 34, 37-28 (1st Cir. 2009) (trial court's order preventing anyone from leaving or entering the courtroom during its charge to the jury did not constitute a violation of the defendant's right to a public trial); *Herring v. Meachum,* 11 F.3d 374, 239 (2d Cir.1993) (holding trial court's decision to lock the doors during jury instruction "did not effect a 'closure' for Sixth Amendment purposes" because members of the public had access to the courtroom before the doors were locked and some members of the public were present when the jury charge was delivered); *Bell v. Evatt,* 72 F.3d 421, 433 (4th Cir.1995) (rejecting defendant's argument that trial court's prevention of ingress and egress during witness testimony violated right to public trial and holding that the defendant's Sixth Amendment rights were not implicated by "temporary limitation of ingress and egress to the courtroom to prevent disturbance of the proceedings."); *see also United States v. Dugalic,* 489 F. App'x. 10, 19 (6th Cir. 2012) (holding that there was no violation of the right to a public trial where "the public was not denied access to the courtroom during closing arguments; it was merely prevented from entering and leaving the courtroom while those arguments were going on.").

The Court finds these decisions persuasive and comparable to the instant case. Here, there is no evidence that the trial court sought to exclude the public from attending the jury instructions, and the Government has represented that there were members of the public present during the instructions. There is also no evidence that the trial court's locking of the doors actually excluded anyone from the proceedings, nor is there evidence that the trial court excluded anyone from any other phase of the trial. In these circumstances, the Court concludes that the trial court's prevention of any ingress or egress during the time that the jury was being charged does not constitute a denial of public access to court proceedings such as to implicate Cruz's Sixth Amendment rights.

In view of the foregoing, the Court concludes that the challenge Cruz specifies in his nineteenth ground for relief is without factual or legal basis or merit.

**Related Ineffective Assistance Claims**. Because this challenge is without merit, the Court finds that neither Cruz's trial counsel's nor appellate counsel's failure or refusal to raise these issues amounted to deficient representation or prejudiced Cruz's defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Ground Nineteen.

### 10. Ground Relating to *Ex Parte* Conference (Ground Twenty)

In his twentieth ground for relief, Cruz argues that the trial court improperly held an *ex parte* conference with a key government witness and improperly prohibited Cruz from cross-examining the witness with respect to his statements in the *ex parte* conference, thereby violating Cruz's due process rights and Sixth Amendment right of confrontation. (Dkt. No. 870; Dkt. No. 746 at 11-13). Cruz additionally argues that his trial and appellate counsel were ineffective insofar as they failed to raise this issue. (Dkt. No. 746 at 12).

As Magistrate Judge Cannon explains, Cruz's challenge is based on an *ex parte* conference between "a witness, the witness's mother, and a third party outside the presence of counsel." (Dkt. No. 896 at 13). In substance, "the witness complained to the judge that he was being harassed by the police and that he had also been threatened by the defendants," and the witness "expressed that he did not want to testify, [] could not identify the robbers, and . . . was tired of being harassed by the police." *Id.* In response, the judge "told the witness that if he felt unsafe, some level of

protection could be arranged for him," and "called the government attorneys into chambers and briefly explained that the witness might desire protection." *Id.* (citing Trial Tr., Vol. 1, at 50-70).

As Magistrate Judge Cannon explained, the witness's *ex parte* statements were not testimonial. *Id.* at 14-15. Accordingly, the Confrontation Clause, which applies only to testimonial statements, is not implicated. *Crawford*, 541 U.S. at 59. Further, Cruz fails to show how he was prejudiced by any of the statements made at the conference, or by the trial judge's ruling that any questioning about the same was not permitted. (Dkt. No. 896 at 14). Indeed, "no evidence was admitted nor were any orders issued as a result of the conference." *Id.*

In view of the foregoing, the Court concludes that the challenge Cruz specifies in his twentieth ground for relief is without factual or legal basis or merit.

**Related Ineffective Assistance Claims**. Because this challenge is without merit, the Court finds that neither Cruz's trial counsel's nor appellate counsel's failure or refusal to raise these issues amounted to deficient representation or prejudiced Cruz's defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285.

Accordingly, the Court will deny Cruz's Motion to Vacate insofar as it seeks relief under Ground Twenty.

## C.   Cruz's Additional Supplemental Challenges Relating to Rights Subsequently Recognized by the Supreme Court

In his First, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Motions to Supplement, Cruz challenges his convictions in light of rights the Supreme Court recognized after Cruz filed his Motion to Vacate on June 10, 2013. (Dkt. No. 753). Specifically, Cruz challenges his convictions in light of: *Alleyne v. United States*, 570 U.S. 99 (Dkt. No. 779) (Ground 21); *Rosemond v. United States,* 572 U.S. 65 (Dkt. No. 916) (Ground 22); *Davis v. United States*, 139 S. Ct. 2319 (Dkt. Nos.

919, 938) (Ground 23); *Borden v. United States*, 141 S. Ct. 1817 (Dkt. No. 952) (Ground 24); *United States v. Taylor*, 142 S. Ct. 2015 (Dkt. No. 957) (Ground 25); and *Lora v. United States*, 143 S. Ct. 1713 (Dkt. No. 989) (Ground 26).

The Government argues that Cruz's challenges are untimely.[40] (Dkt. No. 982 at 6-9). Motions to vacate filed under Section 2255 are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). As relevant here, where a petitioner challenges his conviction(s) based on rights subsequently recognized by the Supreme Court, Section 2255(f)(3) provides that the petitioner has one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" *Id.* § 2255(f)(3).

As an initial matter, because Cruz was sentenced before the Supreme Court handed down any of these decisions, for each of these challenges to succeed, the decisions must apply retroactively on collateral review for purposes of Section 2255(f)(3).[41] Cruz's challenges under *Alleyne* and *Rosemond* do not clear this bar. *See United States v. Reyes*, 755 F.3d 210, 212 (3d Cir.

---

[40] By Order dated March 8, 2023, the Court directed the Government to respond to Cruz's challenges under *Rosemond*, *Davis*, *Borden*, and *Taylor* (Dkt. No. 966), and the Government contends that each of these challenges is untimely (Dkt. No. 982). The Court did not request briefing on Cruz's challenge under *Alleyne*, and the Government never responded to Cruz's *Alleyne* challenge.

[41] As Cruz raises these challenges in supplements to his first Section 2255 petition, the question is whether these decisions retroactively apply for purposes of Section 2255(f)(3), not whether the Supreme Court has "made" them retroactive for purposes of authorizing a second or successive petition under Section 2255(h)(2). *See generally In re Jackson*, 776 F.3d 292 (5th Cir. 2015) (explaining that decisions announcing a new substantive rule of either constitutional law or statutory interpretation apply retroactively for purposes of authorizing an initial petition under Section 2255(f)(3) regardless of whether the Supreme Court has "made" those rules retroactive, while only decisions announcing a new rule of constitutional law may apply retroactively for purposes of authorizing a second or successive petition under Section 2255(h)(2), and only if "made" retroactive by the Supreme Court).

2014) (holding that, while *Alleyne* announced a new rule, that rule is "procedural, rather than substantive" and is not a "watershed rule of criminal procedure," and that the Supreme Court "has not chosen to apply *Alleyne*'s new rule retroactively to cases on collateral review"); *Solomon v. Ebbert*, No. 16-CV-00106, 2018 WL 5734691, at *3 (M.D. Pa. Nov. 2, 2018) ("The *Rosemond* Court did not pronounce that it intended its holding to be applied retroactively and the rule set forth therein does not satisfy the requirement of constituting a 'new rule.'" (collecting cases)), *aff'd sub nom. Solomon v. Warden Lewisburg USP*, 764 F. App'x 140 (3d Cir. 2019). By contrast, *Borden* and *Taylor* are cases of substantive statutory interpretation, which apply retroactively on collateral review for purposes of Section 2255(f)(3). *Teague v. Lane*, 489 U.S. 288, 310 (1989). Likewise, *Davis* sets forth a new substantive rule of constitutional law, which applies retroactively on collateral review for purposes of Section 2255(f)(3). *Id.* The question therefore becomes whether Cruz's *Borden*, *Davis*, *Taylor,* and *Lora* challenges were raised within Section 2255(f)(3)'s one-year statute of limitations.

Cruz's *Borden* challenge was raised outside of the one-year statute of limitations: *Borden* was decided on June 10, 2021, 141 S. Ct. 1817, and Cruz filed his Seventh Motion to Supplement, in which he raised his *Borden* challenge for the first time, on August 25, 2022 (Dkt. No. 957). However, Cruz's *Davis*, *Taylor*, and *Lora* challenges were each raised within the one-year statute of limitations. *Davis* was decided on June 24, 2019, 139 S. Ct. 2319, and Cruz filed his Fifth Motion to Supplement, in which he raised his *Davis* challenge, on October 10, 2019. (Dkt. No. 919). Likewise, *Taylor* was decided on June 21, 2022, 142 S. Ct. 2015, and Cruz filed his Sixth Motion to Supplement, in which he raised his *Taylor* challenge, on August 1, 2022. (Dkt. No. 957). *Lora* was decided on June 12, 2023, 143 S. Ct. 1713, and Cruz filed his Eighth Motion to

Supplement, in which he raised his *Lora* challenge for the first time, on July 10, 2023. (Dkt. No. 989). Cruz's *Davis*, *Taylor*, and *Lora* challenges are therefore timely.[42]

In *Davis* and *Taylor*, the Supreme Court addressed the circumstances under which a defendant may be subject to enhanced criminal penalties under Section 924(c)(1) of Title 18 of the United States Code, which sets forth mandatory minimum sentences for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm[.]" 18 U.S.C. § 924(c)(1)(A). By virtue of interpreting Section 924(c), the *Davis* and *Taylor* decisions also bear on the circumstances under which a defendant may be subject to enhanced criminal penalties under Section 924(j), which sets forth additional mandatory minimum sentences for "[a] person who, in the course of a violation of [Section 924(c)], causes the death of a person through the use of a firearm[.]" *Id.* § 924(j).

Central to both *Davis* and *Taylor* is the question of how the term "crime of violence"—as used in Section 924(c) and thereby incorporated into Section 924(j)—is defined. Section 924(c)(3) defines a "crime of violence" as "an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3). Section 924(c)(3)(A) is called the "elements clause," while Section 924(c)(3)(B) is called the "residual clause." *Davis*, 139 S. Ct. at 2324. In *Davis*, the Supreme Court held that the residual clause of Section 924(c)(3)

---

[42] Because the Court concludes that Cruz's *Taylor* challenge warrants vacatur of Counts 6 and 9, the Court does not address whether Cruz's *Borden* challenge—which targets the same convictions and which was raised outside the one-year statute of limitations—"relates back" to the date he filed his initial petition. The Court also does not consider whether Cruz's *Davis* and *Lora* challenges—which also target the same convictions—warrant relief.

was unconstitutionally vague, meaning that only crimes that satisfy Section 924(c)(3)'s elements clause may qualify as "crime[s] of violence" for purposes of subjecting a defendant to enhanced penalties under Section 924(c)(1)(A) or Section 924(j). *Id.* at 2336. Subsequently, in *Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a "crime of violence" under Section 924(c)(3)'s elements clause because no element of the offense categorically requires proof that the defendant used, attempted to use, or threatened to use force. 142 S. Ct. at 2020.

Cruz argues that *Davis* and *Taylor* bear on four of his convictions. (Dkt. Nos. 919, 938, 952). First, **Count 6**—causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1)—is predicated upon Count 2, attempted Hobbs Act robbery in violation of 18 U.S.C. 1951(a). (Dkt. No. 309 at 3, 7). Cruz was sentenced to life imprisonment on this count. (Dkt. No. 686 at 3). Second, **Count 7**—unauthorized use of a firearm during a crime of violence, in violation of 14 V.I.C. § 2253(a)—is predicated upon Count 5, felony murder in the first degree in violation of 14 V.I.C. § 922(a)(2). (Dkt. No. 309 at 6, 8).   Cruz was sentenced to life imprisonment on this count. (Dkt. No. 578 at 1). Third, **Count 9**—using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)—is predicated upon Count 8, attempted carjacking in violation of 18 U.S.C. § 2119(1). (Dkt. No. 309 at 9, 10). Cruz was sentenced to 25 years' imprisonment on this count. (Dkt. No. 686 at 3). Fourth, **Count 11**—using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A))—is predicated upon Count 10, carjacking in violation of 18 U.S.C. § 2119(1). (Dkt. No. 309 at 11, 12). Cruz was sentenced to 25 years' imprisonment on this count. (Dkt. No. 686 at 3).

Cruz is incorrect that Count 7—and Count 11 are implicated by *Davis* or *Taylor*. Count 7—unauthorized use of a firearm during a crime of violence, in violation of 14 V.I.C. § 2253(a)— arises under territorial law and is predicated upon Cruz's use of a firearm during the course of

another felony recognized by territorial law. Neither *Davis* nor *Taylor* has any bearing on this situation. While Cruz's conviction on Count 11—using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)—arises under Section 924(c), that count is predicated upon substantive carjacking—an offense untouched by either *Taylor* or *Davis*. *Cf. United States v. Stoney*, 62 F.4th 108, 114 (3d Cir. 2023) (concluding that completed Hobbs Act robbery remains a valid Section 924(c) predicate after *Taylor*); *Taylor*, 142 S. Ct. at 2020 ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause." (emphasis in original)).

Cruz's convictions under Counts 6 and 9 are a different matter, as the Government recognizes here. (*See* Dkt. No. 882 at 14-15 (recognizing that, should the Court find that Cruz's *Taylor* challenge is timely, Counts 6 and 9 "need to be vacated")). *Taylor* precludes predicating a Section 924(c) conviction on attempted Hobbs Act robbery, and Cruz's Section 924(c) conviction on Count 6 is so predicated. The Court will therefore vacate Cruz's conviction on Count 6 on this basis. Likewise, the parties agree that Cruz's Section 924(j) conviction on Count 9 also falls to *Taylor* because—as the Government puts it—"attempted carjacking . . . may consist only of attempt to present a threat, and therefore does not categorically qualify as a 'crime of violence' under the elements clause." (Dkt. No. 882 at 15). The Court will therefore vacate Cruz's Count 9 conviction based on the parties' agreement.[43]

---

[43] The Third Circuit has not yet addressed the question whether *Taylor* warrants vacatur of a conviction predicated on attempted carjacking. However, a panel of the Third Circuit appears to have recognized the likelihood that *Taylor* impacts such convictions in a recent unpublished opinion, in which it expressed "confiden[ce]" that the government would "quickly" address the potential impact of *Taylor* on a defendant's Section 924(c) convictions that were predicated on attempted carjacking. *United States v. Lewis*, No. 22-2190, 2022 WL 4546859, at *1 n.1 (3d Cir. Sept. 29, 2022). The government has often taken the position, as it does here, that *Taylor* applies with equal force to attempted carjacking. *See, e.g., United States v. Daniels*, No. 11-CR-00008,

In view of the foregoing, the Court concludes that Cruz's convictions on Counts 6 and 9 must be vacated in light of *Taylor*. The Court addresses the consequences of this finding in the following section.

## D. Effect of Vacatur

Having determined that Counts 6 and 9 are "vulnerable to collateral attack," the Court must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 18 U.S.C. 2255(b). The Third Circuit has adopted the "sentencing-package doctrine." *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997). The sentencing-package doctrine recognizes "a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan." *Id.* at 122 (quotation omitted); *see also Dean v. United States*, 581 U.S. 62, (2017) (explaining that sentencing-package cases "typically involve . . . a successful attack by a defendant on some but not all of the counts of conviction*"* (quoting *Greenlaw v. United States*, 554 U.S. 237, 253 (2008)). Accordingly, "[w]hen a conviction on one or more [] component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture[.]" *Davis*, 112 F.3d at 122 (quotation omitted).

---

2023 WL 2588172, at *2 (M.D. Ala. Mar. 21, 2023) (noting that "the parties contend that *Taylor*'s analysis of attempt law applies equally to attempted carjacking because a conviction for attempted carjacking does not categorically require the government to prove the use, attempted use, or threatened use of force," and granting motion to vacate conviction on that basis) (internal citation omitted); *Williams v. United States*, No. 19-CV-02668, 2022 WL 17752128, at *2 (E.D. Mo. Dec. 19, 2022) (noting that "[t]he parties agree . . . that the Supreme Court's reasoning set forth in *Taylor* applies equally to attempted carjacking" and granting motion to vacate conviction on that basis); *cf. United States v. Obanion*, No. 98-CV-00442, 2022 WL 18027791, at *1 (D. Md. Dec. 30, 2022) (holding that conspiracy to commit carjacking and attempted carjacking "no longer qualify as crimes of violence in light of the opinion of the United States Supreme Court in [*Davis*] and the recent opinion of the Supreme Court in [*Taylor*]").

"The district judge's goal in revisiting the overall sentencing plan after vacatur of a conviction is to ensure that the punishment still fits both crime and criminal." *United States v. Grant*, 9 F.4th 186, 199 (3d Cir. 2021) (quotation omitted).

The Third Circuit has stressed that "the sentencing package doctrine should be confined to cases in which the sentences on the underlying counts [are] *interdependent." United States v. Miller*, 594 F.3d 172, 180 (3d Cir. 2010) (citing *McKeever v. Warden SCI-Graterford,* 486 F.3d 81, 87-88 (3d Cir. 2007), and *United States v. Murray,* 144 F.3d 270, 273 n.4 (3d Cir.1998)) (emphasis in original). Where the sentences on the underlying counts are interdependent, *de novo* resentencing is necessary. *Id.* at 181-82 ("[W]e reaffirm the sentencing package doctrine endorsed in *Davis.* When a conviction on one or more interdependent counts is vacated on appeal, the resentencing proceeding conducted on remand is *de novo* unless we specifically limit the district court's authority. Moreover, counts that were grouped pursuant to the Sentencing Guidelines at the original sentencing are interdependent, such that the vacation of one of the grouped counts requires a *de novo* sentencing on remand unless we direct otherwise."); *United States v. Ciavarella*, 716 F.3d 705, 734 (3d Cir. 2013) (same). This is because interdependent offenses "result in an aggregate sentence, not sentences which may be treated discretely." *Id.* at 180 (quotation omitted).

Offenses are interdependent when they are "grouped" pursuant to Section 3D1.2 of the Sentencing Guidelines, "Groups of Closely Related Counts." *Id.* at 180-81. Section 3D1.2 provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> (a) When counts involve the same victim and the same act or transaction.
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

48

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

USSG. § 3D1.2.[44]

Cruz was initially convicted of eleven counts. (Dkt. No. 486). District Judge Raymond L. Finch subsequently acquitted Cruz on two of these counts, Counts 3 and 4, after Cruz filed for judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure (Dkt. No. 658). Of the nine counts that remained in place following the vacatur of Counts 3 and 4, seven are federal counts and two are territorial counts. The sentences Judge Finch imposed on the seven federal counts are as follows:

> **Count 1: 20 years**, for conspiracy to interfere with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a);

> **Count 2: 20 years**, for attempted interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a);

> **Count 6: Life**, for causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1);

> **Count 8: 15 years**, for attempted carjacking, in violation of 18 U.S.C. §2119(1);

> **Count 9: 25 years**, for using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A);

> **Count 10: 15 years**, for carjacking, in violation of 18 U.S.C. §2119(1); and

> **Count 11: 25 years**, for using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

---

[44] Cruz was sentenced on January 28, 2009. (Dkt. No. 683). The sentencing manual in effect at that time contained virtually identical language.

(Dkt. No. 686 (Amended Judgment and Commitment Order)). The sentences Judge Finch imposed on the two territorial counts are as follows:

> ➢ **Count 5: Life**, for felony murder in the first degree, in violation of 14 V.I.C. § 922(a)(2); and

> ➢ **Count 7: 15 years and a fine of $50,000**, for unauthorized use of a firearm during a crime of violence, in violation of 14 V.I.C. § 922(a)(2).

(Dkt. No. 578 (Judgment and Commitment Order on Territorial Counts)). Judge Finch specified that the territorial counts are to run consecutive to the federal counts and consecutive to one another, and that they are to be served after the term of imprisonment on the federal counts. (Dkt. No. 578 at 1; Dkt. No. 686 at 3).

There is no question that the counts the Court vacates here—Counts 6 and 9—are interdependent with the seven other counts. At minimum, the counts "involve the same victim and the same act or transaction" under Section 3D1.2(a)—namely, the carjacking, robbery, and murder of a police officer. USSG § 3D1.2(a). Accordingly—and as recognized by the Government (*see* Dkt. No. 982 at 20)—the sentencing-package doctrine requires that Cruz be resentenced *de novo* on the seven remaining counts: Counts 1, 2, 5, 7, 8, 10, and 11.

## IV.    CONCLUSION

In view of the foregoing, the Court will vacate Counts 6 and 9 and will schedule, by separate Order, a resentencing hearing to address the seven remaining counts. The Court will otherwise deny Cruz's Motion to Vacate, and will adopt Magistrate Judge Cannon's R&R as modified herein.

An appropriate Order accompanies this Memorandum Opinion.

Date:   July 18, 2023                                    _____/s/_____
                                                        WILMA A. LEWIS
                                                        District Judge